# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBBIE EMERY BURKE, as Special Administratrix for the Estate of MITCHELL LEE GODSEY, deceased,<br><br>Plaintiff,<br><br>v.<br><br>VIC REGALADO, in his official capacity; BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY; ARMOR CORRECTIONAL HEALTH SERVICES, INC.; ANGELA MCCOY, LPN; CURTIS MCELROY, D.O.; and SETH WHITMAN,<br><br>Defendants. | Case No. 18-CV-231-GKF-FHM |

## OPINION AND ORDER

This civil rights action arises from the death of Mitchell Lee Godsey during his detention at the Tulsa County Jail. Before the court are three motions: the Motion to Dismiss [Doc. 17] of defendant Angela McCoy, LPN; the Motion to Dismiss [Doc. 21] of defendant Curtis McElroy, D.O.; and the Motion to Dismiss [Doc. 26] of defendant Seth Whitman. Each movant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, McCoy's motion is granted, McElroy's motion is granted, and Whitman's motion is granted in part and denied in part.

### I. Allegations in the Amended Complaint

The Amended Complaint contains the following factual allegations. In 2013, the Tulsa County Sheriff's Office ("TCSO") retained defendant Armor Correctional Health Services, Inc. ("Armor") to provide medical care to inmates at the Tulsa County Jail. During the relevant period, Armor employed McElroy as a physician and McCoy and Whitman as nurses at the jail.

On July 29, 2016, Godsey was brought to the jail. On the evening of July 30, he began experiencing a loss of consciousness and seizures, and EMSA was called. When EMSA arrived at the jail around 7:40 p.m., the EMT observed that Godsey had "altered mentation possibly due to hypoglycemia." Nurse McCoy reported that Godsey had an abnormal gait, slurred speech, could not talk, was "clammy" and had been dry heaving. He was taken to OSU Medical Center, where his blood sugar level was recorded at 60.

Godsey was returned to the jail later that evening around 10:00 p.m. The OSU discharge instructions state that Godsey was to be evaluated by the jail physician. Around midnight, McCoy conducted an intake screening. In the intake screening form, she reported that Godsey had been to the hospital earlier that day due to "low blood sugar" and that he suffered from diabetes. She approved him for general population housing. At approximately 12:09 a.m. on July 31, she recorded his blood sugar level as 79. She noted that he vomited up the food and glucose he was given.

Godsey was transferred to the jail's infirmary during the early morning hours of July 31. At 11:34 a.m. on July 31, Nurse Whitman recorded Godsey's blood sugar level as 50, which is acutely hypoglycemic. Whitman failed to notify Dr. McElroy and, without a physician's order, administered two glucose tabs. Thereafter, Whitman performed blood sugar tests at 1:39 p.m. with a result of 284 and at 6:24 p.m. with a result of 306. He administered four units and eight units of insulin respectively utilizing a sliding scale.

At around 11:30 p.m. on July 31, TCSO officers discovered Godsey face down on his bed and nonresponsive. He was not breathing and had no pulse. Nurse McCoy and others arrived at his cell. His blood sugar was recorded at 24, which is markedly hypoglycemic.

2

Based on these and other related allegations, plaintiff asserts three causes of action against McCoy, McElroy, and Whitman in the Amended Complaint: (1) a claim pursuant to 42 U.S.C. § 1983 for deliberate indifference to a serious medical need in violation of Godsey's rights under the Due Process Clause of the Fourteenth Amendment; (2) a negligence claim under Oklahoma's common law; and (3) a claim for failure to provide adequate medical care in violation of Sections 7 and 9 of Article II of the Oklahoma Constitution.

## II. Motion to Dismiss Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

## III. Analysis

The court first addresses plaintiff's claims under Oklahoma law and then addresses her claim under 42 U.S.C. § 1983.

**A. Claims under Oklahoma Law**

Defendants McCoy, McElroy, and Whitman argue that plaintiff fails to state a claim against them under Oklahoma law because, as statutory employees of the state, they are immune from tort liability under the Oklahoma Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151 *et seq*.

The GTCA generally immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts. Okla. Stat. tit. 51, § 152.1(A); *see also* Okla. Stat. tit. 51, § 163(C) (precluding tort actions against "an employee of the state or political subdivision acting within the scope of his employment"). This immunity is subject to a limited waiver for the state and its political subdivisions, but "only to the extent and in the manner provided" in the GTCA. Okla. Stat. tit. 51, § 152.1(B).

The issue is whether McCoy, McElroy, and Whitman were "employees" of the state or its political subdivisions for purposes of the GTCA. The statute defines such employees to include "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." Okla. Stat. tit. 51, § 152(7)(b)(7). The Amended Complaint alleges that Armor is a corporation that was retained to provide medical care to inmates at the Tulsa County Jail and was "endowed by Tulsa County with powers or functions governmental in nature," such that Armor "became an agency or instrumentality of the state." [Doc. 3 ¶¶ 4, 62]. The Amended Complaint further alleges that McCoy, McElroy, and Whitman were each "an employee and/or agent of ARMOR/TCSO," and that each acted within the scope of his or her employment and under color of state law. [*Id.* ¶¶ 5–7].

Plaintiff argues that McCoy, McElroy, and Whitman were not state employees because they were employed by Armor, a private corporation, such that there was no privity of contract between

them and Tulsa County. But this argument, which relies on a narrow reading of Okla. Stat. tit. 51, § 152(7)(b)(7), is in tension with the Oklahoma Supreme Court's recent decision in *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 432 P.3d 233 (Okla. 2018).

In *Barrios*, the Oklahoma Supreme Court assumed for purposes of answering certified questions that Turn Key Health, LLC, another entity that contracted to deliver medical care to arrestees at the Tulsa County Jail, and its staff were "employees" under section 152(7)(b). *Id.* at 236 n.5. In doing so, the Oklahoma Supreme Court noted that "[g]enerally speaking, the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA by virtue of sections 152(7)(b), 153(A), and 155(25)." *Id.* Two recent decisions in this district have followed *Barrios* regarding this issue. *See Birdwell v. Glanz*, No. 15-CV-304-TCK-FHM, 2019 WL 1130484, at *10 (N.D. Okla. Mar. 12, 2019); *Prince v. Turn Key Health Clinics, LLC*, No. 18-CV-0282-CVE-JFJ, 2019 WL 238153, at *9 (N.D. Okla. Jan. 16, 2019).

As explained in *Birdwell*, "the *Barrios* holding provides a strong indication that the Oklahoma Supreme Court would find both Armor and its employees . . . to be 'employees' under the GTCA who are entitled to immunity from tort liability." 2019 WL 1130484, at *10. Moreover, the *Barrios* court's interpretation of "employees" is persuasive, as it gives effect to the apparent purpose of the GTCA as reflected in sections 152(7)(b), 153(A), and 155(25), whereas the interpretation suggested by plaintiff would undermine that purpose. *See Prince*, 2019 WL 238153, at *9 (finding *Barrios* persuasive as to meaning of "employees" under the GTCA).

Accordingly, the court holds that defendants McCoy, McElroy, and Whitman are "employees" under the GTCA and therefore immune from tort liability. Immunity under the GTCA, as amended in 2014, extends to tort suits alleging violations of rights under Oklahoma's

constitution. *See Barrios*, 432 P.3d at 238. The court, therefore, dismisses plaintiff's negligence and state constitutional claims against defendants McCoy, McElroy, and Whitman with prejudice.[1]

Plaintiff's state constitutional claim fails for an additional reason. Plaintiff ostensibly brings her claim pursuant to *Bosh v. Cherokee Cty. Bldg. Auth.*, 305 P.3d 994 (Okla. 2013). But, in *Barrios*, the Oklahoma Supreme Court expressly declined to extend its holding in *Bosh* to include tort claims for denial of medical care brought by inmates alleging violations of their rights under Sections 7 and 9 of Article II of the Oklahoma Constitution. *See* 432 P.3d at 235, 239, 241 ("Even if not barred by sovereign immunity . . . it is doubtful that such claims would exist in the Oklahoma common law."). Plaintiff has thus failed to state a claim upon which relief can be granted under Oklahoma law.

## B. The § 1983 Claim

With respect to plaintiff's § 1983 claim, the court first describes the applicable legal framework and then analyzes the sufficiency of the allegations in the Amended Complaint as to each movant separately.

### 1. Legal Framework

A prison official's deliberate indifference to a prisoner's "serious medical needs" constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Tenth Circuit has recognized two types of conduct amounting to deliberate indifference in the context of prisoner medical care. "First, a medical professional may fail to treat a serious medical condition properly." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). When this type of conduct is alleged, "the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition,

---

[1] Because the movants are immune from tort liability under the GTCA, the court does not reach their argument that the applicable statute of limitations bars plaintiff's claims under Oklahoma law.

6

rather than deliberately indifferent." *Id.* (citing *Estelle*, 429 U.S. at 105–06). Second, prison officials may "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.* (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). A prison medical professional who serves solely "as a gatekeeper for other medical personnel capable of treating the condition" may be liable under this standard if he or she "delays or refuses to fulfill that gatekeeper role due to deliberate indifference." *Id.*

Unlike convicted prisoners, pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). Nevertheless, "a pretrial detainee enjoys *at least* the same constitutional protections as a convicted criminal." *Blackmon v. Sutton*, 734 F.3d 1237, 1240–41 (10th Cir. 2013). The Tenth Circuit has long applied the same test for deliberate indifference to serious medical needs to both Eighth Amendment claims brought by prisoners and Fourteenth Amendment claims brought by pretrial detainees. *See, e.g.*, *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *Lopez*, 172 F.3d at 759 n.2.

Under the traditional standard, "[d]eliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Under the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). And, under the subjective component, "the prison official must have a 'sufficiently culpable state of mind.'" *Id.* at 1230–31 (quoting *Farmer*, 511 U.S. at 834). "[O]nly a prison official who knows of and disregards an excessive risk to inmate health or

safety acts with deliberate indifference." *Clark*, 895 F.3d at 1267 (internal quotation marks omitted).

Plaintiff argues that, for pretrial detainees, the traditional standard has been overruled by *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015). In *Kingsley*, the Supreme Court held that the Eighth Amendment standard for excessive force claims brought by prisoners, which requires that defendants acted with a culpable state of mind, does not apply to Fourteenth Amendment excessive force claims brought by pretrial detainees. 135 S. Ct. at 2475. Instead, a pretrial detainee must show only that the force purposely or knowingly used against him was "objectively unreasonable" to prevail on an excessive force claim. *Id.* at 2473.

In an unpublished decision, the Tenth Circuit noted that other circuits "are split on whether *Kingsley* alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees." *Estate of Vallina v. Cty. of Teller Sheriff's Office*, No. 17-1361, 2018 WL 6331595, at *2 (10th Cir. Dec. 4, 2018). In another unpublished decision, the Tenth Circuit observed that the claim in *Kingsley* was "an excessive-force claim where there was no question about the intentional use of force against the prisoner." *Crocker v. Glanz*, 752 F. App'x 564, 569 (10th Cir. 2018). The panel majority in *Crocker* suggested that the "analysis in *Kingsley* may not apply to a failure to provide adequate medical care or screening, where there is no such intentional action." *Id.* But the Tenth Circuit has not yet ruled directly on this issue. *See Clark*, 895 F.3d at 1269 (expressly declining to revisit the law applicable to medical care during pretrial detention in light of *Kingsley*); *Perry v. Durborow*, 892 F.3d 1116, 1122 n.1 (10th Cir. 2018) (expressly declining to address *Kingley*'s impact on a pretrial detainee's claim of supervisory liability premised on deliberate indifference).

8

Because *Kingsley* did not address the standard applicable to a pretrial detainee's denial of medical care claim, this court follows existing Tenth Circuit precedent as to the appropriate standard. *See Garrett v. Dupont*, No. 18-CV-284-TCK-JFJ, 2018 WL 2760028, at *3 n.2 (N.D. Okla. June 8, 2018); *Moore v. Goodman*, No. 17-CV-196-CVE-JFJ, 2017 WL 4079401, at *3 n.1 (N.D. Okla. Sept. 14, 2017).

## 2. Dr. McElroy

The Amended Complaint fails to allege facts sufficient to state a plausible claim that Dr. McElroy was deliberately indifferent to Godsey's serious medical needs. To recover damages from McElroy under § 1983, plaintiff must show that McElroy "personally participated" in the alleged constitutional violation. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). The Tenth Circuit has "stressed the need for careful attention to particulars" in § 1983 lawsuits involving multiple defendants. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.").

The Amended Complaint contains few allegations pertaining to McElroy, and most of those allegations—*e.g.*, [Doc. 3 ¶¶ 69, 71, 89]—are conclusory. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (stating that conclusory allegations in a complaint are "not entitled to the assumption of truth"). The gravamen of plaintiff's complaint against McElroy is that he never saw or evaluated Godsey during the period—approximately twenty-five and a half hours—when Godsey was in the jail after returning from OSU Medical Center. [Doc. 3 ¶ 18]. But the Amended Complaint fails to allege facts supporting an inference that McElroy was aware of Godsey's condition or even his presence in the jail. Indeed, the Amended Complaint alleges that the decrease

9

in Godsey's blood sugar level "should have triggered an immediate call to Dr. McElroy," but Nurse Whitman failed to notify a healthcare provider and acted "without any supervision from a physician." [Doc. 3 ¶¶ 26–27, 30]. According to the Amended Complaint, the OSU discharge instructions state that Godsey was to be evaluated by the jail physician, but the Amended Complaint fails to allege that McElroy was aware of this instruction. The allegations in the Amended Complaint do not indicate that McElroy had any involvement in Godsey's medical care, or notice of the need thereof.

In short, the Amended Complaint fails to describe any act or omission by McElroy that rises to the level of a constitutional violation. Under the traditional standard, the Amended Complaint fails to satisfy the subjective component because it fails to plausibly allege that McElroy knew of and disregarded an excessive risk to Godsey's health or safety. Moreover, even under a less stringent standard based on *Kingsley*, the Amended Complaint fails to state a claim against McElroy because it fails to plausibly allege that he acted in a manner that was objectively unreasonable. *Cf. Estate of Vallina*, 2018 WL 6331595, at *3 (concluding that plaintiffs' claim would fail under either standard). Accordingly, the court dismisses plaintiff's § 1983 claim against Dr. McElroy without prejudice.

### 3. Nurse McCoy

The Amended Complaint also fails to allege facts sufficient to state a plausible claim that Nurse McCoy was deliberately indifferent to Godsey's serious medical needs. Based on the allegations in the Amended Complaint, the extent of McCoy's involvement with Godsey was limited. It is unclear what specific acts or omissions form the alleged basis of plaintiff's deliberate indifference claim against McCoy.

According to the Amended Complaint, McCoy reported that Godsey began experiencing a loss of consciousness and seizures on the evening of July 30, 2016. EMSA was called, and Godsey

was taken to the OSU Medical Center, which discharged him about two hours later. These allegations do not suggest any deliberate indifference by McCoy. The Amended Complaint alleges that McCoy "failed to document" Godsey's blood sugar level on the evening of July 30 in his medical chart, but the Amended Complaint lacks any factual allegations demonstrating how this omission caused any injury or rose to the level of deliberate indifference—especially where Godsey was transported to a hospital and subsequently discharged.

Around midnight on July 31, about two hours after Godsey returned to the jail, McCoy conducted an intake screening, which included testing Godsey's blood sugar level, recording the events of the evening, and administering food and glucose. Again, such allegations do not suggest any deliberate indifference by McCoy. The Amended Complaint alleges that McCoy approved Godsey for general population housing following the intake screening, but the Amended Complaint fails to allege facts demonstrating how this approval caused any injury or rose to the level of deliberate indifference. According to the Amended Complaint, Godsey was only in general population for a few hours before he was transferred to the infirmary during "the early morning hours" of July 31. [Doc. 3 ¶¶ 21, 24].

McCoy's alleged involvement with Godsey's care ended at this point until she responded to Godsey's cell after he was found without a pulse at approximately 11:30 p.m. on July 31. Nurse Whitman—not Nurse McCoy—allegedly treated Godsey during the day of July 31 before his death. The Amended Complaint does not identify any objection to McCoy's response after officers found Godsey in his cell.

The Amended Complaint fails to describe any act or omission by McCoy that rises to the level of a constitutional violation. To the extent the Amended Complaint reflects plaintiff's disagreement with the brief course of treatment provided to Godsey by McCoy, such

11

disagreements alone are not sufficient to state a claim for deliberate indifference in violation of Godsey's constitutional rights. *See Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018); *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." (citing *Estelle*, 429 U.S. at 104–06)).

To the extent plaintiff premises her deliberate indifference claim against McCoy on a theory of gatekeeper liability, the Amended Complaint is insufficient because it fails to allege facts supporting an inference that McCoy refused to fulfill her gatekeeper role due to deliberate indifference. *Cf. Randolph v. Glanz*, No. 16-CV-0154-CVE-TLW, 2016 WL 4992497, at *4 (N.D. Okla. Sept. 16, 2016) (granting motion to dismiss where plaintiff failed to allege facts showing that "the nurse actually recognized that plaintiff's condition was beyond her ability to treat and decided not to consult a doctor anyway"). The Tenth Circuit has held that gatekeeper claims are "actionable *only* in cases where the need for additional treatment or referral to a medical specialist is *obvious*." *Clark*, 895 F.3d at 1269 (quoting *Self*, 439 F.3d at 1232).

Here, the gatekeeper function was fulfilled after McCoy observed Godsey exhibiting symptoms on the evening of July 30. EMSA was called, and Godsey was taken to the OSU Medical Center, which later discharged him. After Godsey returned from the hospital, McCoy performed an intake screening. Although the OSU discharge instructions allegedly stated that Godsey was to be evaluated by the jail physician, the Amended Complaint does not allege that the instructions mandated that Godsey see the jail physician immediately upon intake at the jail following return from the hospital after midnight on a Sunday morning. The Amended Complaint does not allege facts supporting an inference that, after Godsey returned from the hospital, McCoy knew that Godsey needed to see a physician urgently or disregarded an obvious need for additional

12

treatment. *Cf. Randolph*, 2016 WL 4992497, at *4 ("[P]laintiff has not alleged any facts to support the claim that the nurse acted with a level of care inconsistent with the symptoms presented."). The court, therefore, dismisses plaintiff's § 1983 claim against Nurse McCoy without prejudice.

### 4. Nurse Whitman

In contrast, the Amended Complaint states a deliberate indifference claim against Nurse Whitman that is plausible on its face. According to the Amended Complaint, the Oklahoma Board of Nursing entered a stipulated order of discipline against Whitman. As part of that order, Whitman stipulated that he failed to notify a healthcare provider of Godsey's low blood sugar level of 50 recorded some twelve hours after Godsey's return from the hospital, and that Whitman administered glucose tabs and insulin without a healthcare provider's order. Whitman further stipulated that his conduct violated certain provisions of the Oklahoma Nursing Practice Act and Nursing Board Rules, including provisions concerning jeopardizing a patient's life, health, or safety. About five hours after Whitman administered the last dose of insulin, Godsey was found unresponsive and with a blood sugar level of 24, which is markedly hypoglycemic. These allegations—in conjunction with the other allegations in the Amended Complaint—are sufficient to state a plausible claim that Whitman acted with deliberate indifference to Godsey's serious medical needs either by recklessly failing to treat Godsey properly or by recklessly denying Godsey access to medical personnel capable of providing appropriate treatment. The court, therefore, denies Whitman's motion to dismiss as to plaintiff's § 1983 claim against him.

### IV. Conclusion

WHEREFORE, defendant McCoy's Motion to Dismiss [Doc. 17] is granted, defendant McElroy's Motion to Dismiss [Doc. 21] is granted, and defendant Whitman's Motion to Dismiss [Doc. 26] is granted in part and denied in part. Whitman's motion is granted as to plaintiff's

negligence and state constitutional claims, but is denied as to plaintiff's claim under 42 U.S.C. § 1983.

IT IS SO ORDERED this 26th day of March, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE